# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OLANDER RAYMOND RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:19cv352 |
| ) | |
| SGT. TAYLOR and ) | |
| OFFICER HOPKINS, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendants' Motion to Dismiss Plaintiff's Complaint" (Docket Entry 12) (the "Dismissal Motion") filed by "Sgt. Taylor and Officer Hopkins" (collectively, the "Defendants") (id. at 1).[1] For the reasons that follow, the Court should grant in part and deny in part the Dismissal Motion.

### BACKGROUND

Alleging that Defendants "violated [his] eight[h-]amendment" rights "by using excessive force" (Docket Entry 2 (the "Complaint") at 4), Olander Raymond Richardson (the "Plaintiff"), now a federal prisoner (see id. at 2), initiated this action pursuant to 42 U.S.C. § 1983 against Defendants in their individual and official capacities (see id. at 2-3), for their alleged actions on the night

---

[1] Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination. For legibility reasons, this Opinion uses standardized spelling and capitalization in all quotations from the parties' materials.

of April 11, 2017, at the Alamance County Jail (see id. at 5-6). According to the Complaint:

On April 11, 2017, something "went on inside [the] S Block" of the Alamance County Jail, prompting officers to "lock [the prisoners] down." (Id. at 12.) At that time, Plaintiff "was on the phone so [he] and Sgt. Taylor had some words[: Sgt. Taylor] told [Plaintiff] to pack [his] stuff[. Plaintiff] told [Sgt. Taylor] to pack it[.]" (Id.) Sgt. Taylor then entered Plaintiff's cell and began to throw Plaintiff's "mail and food on the top tear well top level of the Block[,] so [Plaintiff began] telling [Sgt. Taylor] that he had no reasons to throw [Plaintiff's] personal stuff." (Id. at 12-13.)

Sgt. Taylor "then beg[a]n to force [Plaintiff] down the stairs[,] grabbing [Plaintiff] in an unprofessional way[. As] soon [as they] got outside of [the] S Block[, Plaintiff] pull[ed his] arm[. Sgt. Taylor] then beg[a]n to throw punches." (Id. at 13.) "[B]eing in defense mode[, Plaintiff] start[ed] to block [his] face[.] Officer Hopkins came to [Plaintiff's] right side and began to help punch [Plaintiff]." (Id.) "[T]hey g[o]t [Plaintiff] to the ground and cuff[ed Plaintiff] and Officer Taylor [sic] [as] well [as] Sgt. Taylor began to hit [Plaintiff] with the stick they use to hit the buttons in the block to keep up with the rounds[.]" (Id.) "[Plaintiff] just saw blood all over the floor[.]" (Id.)

2

"Jimmy Downny from Q Block saw it[,] Atonio Griffen[,] Desmond Maccaire, Josh Gaint, on that night all blocks didn't lock down because they saw [Plaintiff] getting beat while handcuffed so street officers w[ere] called[.]" (Id.)[2] "[Plaintiff] was t[aken] to medical by Officer Allen" (id.), who "was present but never cause[d] no harm" (id. at 12). "Justice Paul[,] a female[,] she said what happen[ed] to you[? Plaintiff] told her." (Id. at 13; see also id. ("[I]f [Plaintiff] was a problem[,] why wasn't [he] tased[?]").)

As a result of the foregoing, Plaintiff "had a broken nose[, so he] went to Alamance Regional Hospital[ and was] referred to a nose specialist." (Id. at 5.) Plaintiff "went to medical for pain meds[,]" but still experiences headaches and "breathing problems and see[s] speaks [sic] in [his] vision." (Id.) As relief, Plaintiff asks "for [his] medical bills to be paid" and for "$350,000 for [his] pain and suffering." (Id.)

In response, Defendants "move[] to dismiss the Complaint . . . pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" (the "Rules"). (Docket Entry 12 at 1.) Plaintiff opposes the Dismissal Motion (see Docket Entry 16), at least regarding his individual-capacity claims (see generally id. (addressing

---

[2] Plaintiff remains unsure of how to spell the names of those identified in his Complaint. (Id.)

allegations against Defendants personally without reference to jail policy)).

## DISCUSSION

### I. Relevant Standards

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).[3] Accordingly, in reviewing a Rule 12(b)(6) motion, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of Appeals of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); but see Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the

---

3 Thus, "claims lacking merit may be dealt with through summary judgment under Rule 56" rather than through a Rule 12(b)(6) motion. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002).

4

United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. Nevertheless, the complaint need not contain detailed factual recitations, as long as it provides "the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

Finally, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont, 637 F.3d at 448. The Court may also consider documents "attached to

5

the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Generally, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment," an action from which courts should refrain "where the parties have not had an opportunity for reasonable discovery." E.I. du Pont, 637 F.3d at 448. Nevertheless, in reviewing Rule 12(b)(6) motions, courts "may properly take judicial notice of matters of public record." Philips, 572 F.3d at 180.

## B. Excessive Force Standards

### i. Initial Matters

Plaintiff maintains that Defendants violated his rights under the Eighth Amendment by "maliciously and sadistically" using "excessive force" to cause him bodily harm. (Docket Entry 2 at 12.) However, Defendants characterize Plaintiff's claim as a fourteenth-amendment excessive force claim. (See Docket Entry 15 at 4 ("Claims made by pretrial detainees are governed by the 14th amendment.").) Courts evaluate a pretrial detainee's excessive force claim under the Due Process Clause of the Fourteenth Amendment,[4] but assess a convicted prisoner's excessive force claim pursuant to the Eighth Amendment's Cruel and Unusual Punishment Clause. See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). As

---

4 Plaintiff also asserts that Defendants violated "[his] due process rights." (Docket Entry 2 at 12.)

6

the United States Supreme Court has explained, "[t]he language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" Kingsley v. Hendrickson, 576 U.S. 389, __, 135 S. Ct. 2466, 2475 (2015).

It remains unclear whether Plaintiff qualified as a pretrial detainee at the time of the incident in question. The Complaint alleges that the incident occurred at a North Carolina jail during Plaintiff's confinement there. (See, e.g., Docket Entry 2 at 6, 12.) The Complaint further identifies Plaintiff as a current inmate at a federal penitentiary. (See id. at 2.) This Court's records reflect that Plaintiff appeared on Writs of Habeas Corpus Ad Prosequendum from the custody of the Alamance County Jail for federal criminal proceedings through March 24, 2017. See, e.g., United States v. Olander Raymond Richardson, No. 1:16cr337, Docket Entry 29 (M.D.N.C. Mar. 27, 2017).[5] They further reflect that, at least as late as February 22, 2017, Plaintiff remained in state custody on pending state charges. See United States v. Olander Raymond Richardson, No. 1:16cr337, Docket Entry 25 at 7 (M.D.N.C. Feb. 22, 2017). The materials before the Court do not identify when North Carolina resolved those pending charges against

---

5 The Court may take judicial notice of these court records. See Philips, 572 F.3d at 180.

7

Plaintiff, although Defendants assert in connection with their Dismissal Motion that "Plaintiff is currently incarcerated for convictions" on those charges (Docket Entry 15 at 1).[6] Because the current record does not establish whether the state charges remained pending as of April 11, 2017, it remains unclear whether Plaintiff qualifies as a pretrial detainee in regards to his excessive force claims. As discussed below, however, Plaintiff's individual-capacity claims survive Rule 12(b)(6) dismissal even under the eighth-amendment standard, and thus would also survive dismissal under the fourteenth-amendment standard, see Kingsley, 576 U.S. at __ - __, 135 S. Ct. at 2472-76; see also id. at __, 135 S. Ct. at 2475 ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'").

### ii. Eighth-Amendment Standards

"The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain." Thompson v. Commonwealth of Va., 878 F.3d 89, 97 (4th Cir. 2017) (internal quotation marks omitted). "That protection imposes on prison officials an affirmative 'obligation to take reasonable measures to guarantee the safety of

---

6 Even assuming Defendants' counsel's unsworn statement in Defendants' dismissal memorandum revealed the date of the alleged convictions, the Court could not rely on such statement at this stage of the proceedings. See, e.g., E.I. du Pont, 637 F.3d at 449 ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.").

. . . inmates.'" Id. (ellipsis in original) (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)). Accordingly, in evaluating an eighth-amendment excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. at 98 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In conducting this analysis, the Court considers "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotation marks omitted).

Notably, a prisoner need not suffer a significant injury to prevail on an excessive force claim. Thompson, 878 F.3d at 98; see also Hudson, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." (citation omitted) (citing Whitley, 475 U.S. at 327)). "The excessive force analysis thus focuses on the maliciousness of the force used, not the severity of the injury that results from that force." Thompson, 878 F.3d at 101; see also Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to

9

escape without serious injury."). As such, an injury qualifies as "sufficiently serious for purposes of the objective component of an [e]ighth[-a]mendment excessive force claim as long as it rises above the level of de minimus harm." Iko, 535 F.3d at 238.[7]

As for the subjective component, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" Id. at 239 (quoting Whitley, 475 U.S. at 322); see also id. ("Put differently, the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting Hudson, 503 U.S. at 7)). The United States Supreme Court has identified four factors to assist courts in determining whether an officer acted with "wantonness":

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

Id. (quoting Whitley, 475 U.S. at 321). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is

---

[7] Notably, although "an excessive force plaintiff need not show significant injury, the extent of injury may supply insight as to the force applied." Cowart v. Erwin, 837 F.3d 444, 453 (5th Cir. 2016).

10

tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321.

### C. Analysis

Defendants move to dismiss Plaintiffs' claims against them in both their individual and official capacities. (See Docket Entry 15 at 3-5; see also Docket Entry 12 at 1 (seeking dismissal of Complaint with prejudice).) More specifically, Defendants maintain that Plaintiff's official-capacity claims fail because he "makes no allegation that his alleged harm was cause[d] by a direct constitutional violation by the Sheriff's Office" (Docket Entry 15 at 4), and they contend that his individual-capacity claims fail because "he does not allege he suffered injury due to malice or by any manner other than the attempt to move him" (id. at 5). Defendants' contentions possess merit as to the official-capacity claims, but not the individual-capacity claims.

### i. Official-Capacity Claims

Under Section 1983, official-capacity liability occurs only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Relevant here, "an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy." Perdue v. Harrison, No. 1:17cv403,

11

2017 WL 4804363, at *2 (M.D.N.C. Oct. 24, 2017). "Rather, the official must have 'final authority' over government policy with respect to the action in question to trigger official capacity liability." Id. (certain internal quotation marks omitted).

The Complaint alleges injury from Defendants' actions, but contains no allegations that Defendants acted pursuant to any official custom or policy of the Alamance County Jail. (See generally Docket Entry 2.) Nor does the Complaint allege that Defendants possessed "final authority" over any such custom or policy. (See id.) To the contrary, the Complaint reflects that Defendants remained subordinate to others in the Alamance County Jail. (See id. at 7 (asserting that Plaintiff wrote grievance to "Captain Rich and LT Young" indicating that he "was beat[en] by two of [their] officers and [he] need[s] justice," which resulted in someone(s) "com[ing] to speak with [him]").) Accordingly, the Court should grant Defendants' request to dismiss Plaintiffs' official-capacity claims.

### ii. Individual-Capacity Claims

In their memorandum in support of the Dismissal Motion, Defendants urge dismissal of Plaintiff's individual-capacity claims on the grounds that:

> Plaintiff admits that his cell block was placed on lock down and that he was ordered to pack his belongings, which he did not do. He further admits that he pulled away from officers when they tried to relocate him. Although he contends he was injured, he does not allege

12

he suffered injury due to malice or by any manner other than the attempt to move him.

(Docket Entry 15 at 5.)  This contention lacks merit.[8]

Construed in the light most favorable to Plaintiff, the Complaint alleges that, in response to an unspecified incident, officials began to lock down Plaintiff's housing block in the

---

8  Plaintiff responded to the Dismissal Motion, which he apparently mistook as a motion for summary judgment (see Docket Entry 16 (the "Opposition") at 1 (bearing caption "Plaintiff's Motion in Opposition to Defendants' Summary Judgment Motion")), by filing the Opposition, as well as "Plaintiff's Statement of Disputed Factual Issues" (Docket Entry 17) (the "Statement") and "Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment" (Docket Entry 18) (the "Declaration").  In reply, Defendants maintain that "[t]here are several discrepancies between the Complaint, which was attested to under oath, and the recently filed [material]."  (Docket Entry 20 at 4.)  According to Defendants, "[i]n addition to the deficiencies in Plaintiff's Complaint, meriting dismissal, Plaintiff's disingenuous statements before this Court further mandate dismissal."  (Id. at 5.)  In response, Plaintiff filed an unauthorized surreply, in which he contends "that he did not make any contradictory statements under oath" (Docket Entry 21 at 1) and explains how the statements in his Declaration and Complaint align (see id. at 1-3).

As a preliminary matter, Defendants provide no support for the proposition that such alleged inconsistencies in a plaintiff's filings justify Rule 12(b)(6) dismissal.  (See Docket Entry 20 at 3-5.)  In addition, contrary to Defendants' contentions (see id. at 4-5), Plaintiff did not verify his Complaint (see Docket Entry 2 at 11).  Thus, the record contains only one sworn recitation of Plaintiffs' allegations.  However, the Court can consider neither the Declaration nor the Statement in resolving the Dismissal Motion.  See E.I. du Pont, 637 F.3d at 448-50.  Further, even if the Court could consider the Declaration, it would not alter the outcome, given that, construed in the light most favorable to Plaintiff, the Declaration and Complaint both allege that Defendants continued to beat Plaintiff after placing him in handcuffs (see Docket Entry 2 at 13; Docket Entry 18 at 1-2), an allegation which, as discussed below, plausibly alleges a viable excessive force claim.

13

Alamance County Jail. (Docket Entry 2 at 12.) Sgt. Taylor instructed Plaintiff, who was participating in a telephone conversation, to pack his belongings. (Id.) After Plaintiff responded that Sgt. Taylor should pack Plaintiff's belongings, Sgt. Taylor began throwing Plaintiff's belongings (id. at 12), prompting Plaintiff's verbal objection that Sgt. Taylor "had no reason to throw [Plaintiff's] personal stuff" (id. at 13). In response, Sgt. Taylor grabbed Plaintiff and began forcing him down the stairs. (Id.) When they "got outside of [Plaintiff's housing] block[, Plaintiff] pull[ed his] arm." (Id.)

Sgt. Taylor then began punching Plaintiff, who responded by shielding his face. (Id.) At that point, Officer Hopkins approached Plaintiff's right side and also began punching him. (Id.) After Defendants "g[o]t [Plaintiff] to the ground," they handcuffed him. (Id.) Defendants[9] then began "to hit [Plaintiff]

---

9 Defendants contend that "Plaintiff makes no mention of any purported beating by Defendant Hopkins in his Complaint, he merely claims that Sgt. Taylor 'began to hit him with the stick'" after handcuffing him. (Docket Entry 20 at 4.) In response, Plaintiff states that, although he currently lacks access to his "legal work" due to a lock down at his current prison, "he is sure that he made mention of Defendant Hopkin[s's] participation" in the beating in the Complaint. (Docket Entry 21 at 3; accord id. at 2.) Particularly given the liberal construction afforded pro se materials, the Complaint sufficiently alleges Officer Hopkins's post-handcuff participation in Plaintiff's beating. (See Docket Entry 2 at 13.) First, the Complaint clearly indicates that two distinct individuals, an "Officer" and a "Sgt.," commenced beating Plaintiff with sticks after handcuffing him. (See id. ("[After Sgt. Taylor] beg[a]n to throw punches . . .[,] Officer Hopkins came to [Plaintiff's] right side and began to help punch [Plaintiff.
(continued...)

with the stick they use to hit the buttons in the block to keep up with the rounds." (Id.) Defendants' beating caused Plaintiff to "bl[ee]d all over the floor" (id.) and broke Plaintiff's nose so badly that it required a specialist at the Alamance Regional Hospital to treat it (see id. at 5).

Contrary to Defendants' contention that the above allegations fail to establish "malice" (Docket Entry 15 at 5), the Courts of Appeals have long held that beating a subdued or incapacitated inmate violates the Eighth Amendment. See Thompson, 878 F.3d at 102-06 (discussing cases); see also, e.g., Cowart v. Erwin, 837 F.3d 444, 449-50, 453-55 (5th Cir. 2016) (affirming excessive force verdict where, in 2009, officer punched restrained inmate after he "mouthed off" and disobeyed orders to kneel down, explaining that "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of

---

9(...continued)
T]hey g[o]t [Plaintiff] to the ground and [hand]cuff[ed Plaintiff] and Officer Taylor [sic] [as] well [as] Sgt. Taylor began to hit [Plaintiff] with the stick they use to hit the buttons in the block . . . .").) Second, with the lone exception of this obvious typographical reference to "Officer Taylor" (id.), the Complaint consistently distinguishes between "Sgt. Taylor and Officer Hopkins" (id. at 12; see generally Docket Entry 2), and specifically identifies them as the only two individuals who used excessive force against Plaintiff (see id. at 12 ("Sgt. Taylor and Officer Hopkins w[ere] the two officer[s] who used excessive use of force causing bod[il]y harm," which required Plaintiff "to go to Alamance [Regional] Hospital"); see also id. (explaining that "Officer Allen was present but never cause[d] no harm")). Accordingly, fairly read, the Complaint asserts that both Defendants beat Plaintiff after handcuffing him.

force," id. at 454 (internal quotation marks omitted)); McDowell v. Sheerer, 374 F. App'x 288, 293 (3d Cir. 2010) (ruling, with respect to inmate who, in 2004, escaped his cell and resisted returning to it, that, "if [the inmate] is able to establish that [the d]efendants punched, kicked, hit him in the head with nightsticks, and twisted his testicles, when he was restrained and not resisting, he will have established a violation of the Eighth Amendment"); Perry v. Thompson, 786 F.2d 1093 (11th Cir. 1986) (reversing grant of summary judgment to officers where the plaintiff averred, inter alia, that, in or before 1982, officers beat him while handcuffed, explaining that "[the p]laintiff set out facts tending to establish a prima facie case that the force was excessive," id. at 1095); Slakan v. Porter, 737 F.2d 368, 371-72 (4th Cir. 1984) (concluding that, in 1979, officers violated a plaintiff's constitutional rights where they, inter alia, "beat[] him savagely around the head and body with billy clubs," id. at 372, after incapacitating him). Here, the Complaint asserts that, inter alia, Defendants beat Plaintiff (with sticks) after handcuffing him. As such, construed in the light most favorable to Plaintiff, the Complaint plausibly alleges that Defendants acted "maliciously and sadistically to cause harm," Hudson, 503 U.S. at 7, in violation of Plaintiff's eighth-amendment rights.

Consideration of the Whitley factors confirms this conclusion. As to the first factor, "the need for the application of force,"

16

Iko, 535 F.3d at 239 (internal quotation marks omitted), the Complaint alleges that Defendants beat Plaintiff after "they g[o]t [him] to the ground and [hand]cuff[ed him]" (Docket Entry 2 at 13). Regardless of Defendants' discretion to use some force to regain control after Plaintiff "pull[ed his] arm" away from Sgt. Taylor (id.), the Complaint reflects no further aggression or noncompliance by Plaintiff (see id. (alleging only that Plaintiff shielded his face from Defendants' punches)), particularly after Defendants forced Plaintiff to the ground and placed him in handcuffs (see id.). As the Fourth Circuit has explained, "'[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists.'" Thompson, 878 F.3d at 105 (quoting Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002)). Accordingly, this factor weighs against dismissal.

The second factor, "the relationship between the need and the amount of force that was used," Iko, 535 F.3d at 239 (internal quotation marks omitted), likewise weighs against dismissal. Here, the Complaint alleges that, after Plaintiff pulled his arm away from Sgt. Taylor, Defendants began punching Plaintiff, forced him to the ground, handcuffed him, and continued to beat him, this time with sticks. (See Docket Entry 2 at 13.) This beating caused Plaintiff to bleed profusely and broke his nose so badly that it required treatment by a specialist and caused ongoing difficulties. (See id. at 5, 13.) These allegations "tend to show that the

17

amount of force used was disproportionate to the need for force." Iko, 535 F.3d at 240; see also Cowart, 837 F.3d at 453 (explaining that, in excessive force case, "the extent of injury may supply insight as to the force applied").

The third factor, "the extent of any reasonably perceived threat that the application of force was intended to quell," Iko, 535 F.3d at 239, likewise weighs against dismissal. Put simply, in light of the Complaint's allegations that Plaintiff merely shielded his face in response to Defendants' punches (see Docket Entry 2 at 13), "the threat reasonably perceived by [Defendants] must have decreased as the [beating] continued," Iko, 535 F.3d at 240.[10] This remains particularly true for the period after Defendants forced Plaintiff to the ground and handcuffed him. See id.

Finally, the fourth factor, "any efforts made to temper the severity of a forceful response," id. at 239 (internal quotation marks omitted), also weighs against dismissal. The Complaint alleges that, in response to Plaintiff pulling away from Sgt. Taylor, both Defendants began punching Plaintiff, taking him to the ground and handcuffing him, before beginning to hit him with sticks. (See Docket Entry 2 at 13.) Thus, rather than showing an

---

10  That some unspecified event triggered a lockdown of the housing block from which Sgt. Taylor removed Plaintiff (see Docket Entry 2 at 12-13), does not alter this conclusion, given that the Complaint indicates neither that Plaintiff participated in the triggering event nor that such event remained ongoing when Defendants allegedly beat Plaintiff outside of the affected housing block.

18

attempt to temper the use of force, the Complaint reflects an escalation in force following Plaintiff's incapacitation. Accordingly, the fourth factor also weighs against dismissal.

"All told," at this stage of the proceedings, "these factors combine to provide an inference that [Defendants] wantonly inflicted pain upon [Plaintiff by beating him severely, including after handcuffing him]." Iko, 535 F.3d at 240. The Court should therefore reject Defendants' request to dismiss Plaintiff's individual-capacity excessive force claims.

## CONCLUSION

The Complaint plausibly alleges excessive force claims against Defendants in their individual, but not official, capacities.

**IT IS THEREFORE RECOMMENDED** that the Dismissal Motion (Docket Entry 12) be granted in part and denied in part as follows: Plaintiff's excessive force claims should proceed against Defendants in their individual capacities only.

This 26th day of May, 2020.

                                    /s/ L. Patrick Auld
                                        **L. Patrick Auld**
                        **United States Magistrate Judge**